WEBSTER LOOM CO. *v.* HIGGINS *et al.*

(*Circuit Court, S. D. New York.    July 26, 1889.*)

1. PATENTS FOR INVENTIONS—CARPET-LOOMS—INFRINGEMENT—DAMAGES.
    On bill for infringement of a patented device for weaving carpets, complainant selected another loom, the B., as the standard of comparison by which the increase in production by use of the device infringed should be measured. The master found that still another device, the J., which was in use before complainant's, produced vastly superior results to those produced by the B. *Held,* that the master should have found whether defendants derived any advantage from the use of complainant's device over what they would have had in using the J.

2. SAME—RES JUDICATA.
    A former decision in the case as to the proper rule by which to compute defendants' profits from using complainant's device, rendered in denying defendants' motion to direct the master not to require an accounting of the cost of production and selling price of the carpets, is to be followed upon the hearing of exceptions to the master's report.

In Equity.    Bill for infringement of patent.

Bill by Webster Loom Company against E. S. & N. D. Higgins. Complainant excepts to the master's report.

*Edward N. Dickerson* and *Edward Stephens,* for complainant.

*Livingston Gifford* and *Walter K. Griffin,* for defendants.

SHIPMAN, J.    The questions in this case arise upon the complainant's exceptions to the master's report.    The bill is founded upon the infringement by the defendants of letters patent No. 130,961, dated August 29, 1872, to William Webster, for an improvement in looms for weaving pile fabrics.    In the opinion of the supreme court in this case (*Loom Co. v. Higgins,* 105 U. S. 580) the history of the art and the nature of the improvement are stated, so far as they were developed in the record which was then before the court.    For the better understanding of the questions which came before the master, it is desirable to recapitulate that portion of the opinion:

"In weaving pile fabrics,—such, for example, as Brussels carpet,—the pile or loop is formed by inserting a wire alternately with the filling between the threads of the warp, immediately under the woolen or worsted threads, and afterwards withdrawing it from the web of cloth.    At first these wires were inserted and withdrawn by hand, by the aid of an assistant, which made the process a very slow one, so that only a few yards could be woven in a day on a single loom.    The first great improvement was introduced about 1840-50, by Erastus B. Bigelow, of Massachusetts, who invented a mechanical apparatus, attached to the side of the loom, which automatically inserted the wires in the shed, or opening between the warps, and withdrew them from the web.

\* \* \* This attachment to pile-fabric looms became generally known as the 'wire movement,' and by its aid twenty-five yards a day could be woven on a single loom, without the aid of any assistant. It is seldom that such a complete revolution in one of the useful arts is made at a single jump."

Improvements were made on Bigelow's invention. Among others, William Weild of England, in about 1855, made a decided improvement, which, after being subsequently perfected, enabled 30 or 40 yards a day to be woven on a single loom. But perfect efficiency was not attained by Weild's motion, and its defects made it necessary to work the loom more slowly than the other operations required. Webster's improvement "resulted in giving to the loom the capacity of weaving fifty yards a day." The circuit court, in entering its decree in favor of the complainant in accordance with the instructions of the supreme court, directed the master, among other things, to ascertain and state to the court the number of infringing carpet-looms used by the defendants, the number of yards of carpet which they had caused to be woven thereon since October 20, 1873, and the gains or profits which they had received from infringing the exclusive rights of the complainant. No damages were claimed by the complainant. It was agreed that the defendants had used 61 infringing looms, upon which the master finds that they had woven 8,277,012½ yards of carpet during the eight years they were in use. The complainant insisted that the testimony proved that by means of the infringement the 61 looms produced 4,145,872 yards of carpet over and above what could have been "produced on a like number of looms fitted with any other wire motion, open and free to be used, and that the value of the increased product to the defendants was thirty-six and three-fourth cents per yard, making a total net profit of $1,523,-607.96. The thirty-six and three-quarter cents per yard was arrived at by subtracting the entire cost of manufacturing from the selling price." The master does not find whether the net profit which the defendants made upon their manufactured goods was 36¾ cents per yard; but was of the opinion, as matter of law, that, inasmuch as the wire motion related only to an improvement and increased product in the matter of weaving, which was, although the final process, but one of many processes involved in the art of manufacturing carpets from wool, the entire profit upon the increased production from the use of the wire motion was not the rule of profits, but that the true rule was the profit to the defendants in the matter of weaving, and that the proper inquiry was the difference in the cost of weaving the increased quantity of carpet upon the infringing looms and upon any looms free and open to use. He therefore reported that there had been a failure on the part of the complainant to establish a legal basis for a computation of profits.

The complainant selected the Bigelow loom as the standard of comparison by which the amount of increased production by the use of the Webster motion should be estimated. The defendants insisted that a number of wire motions were at the date of the infringement free and open to use, either of which produced results superior to those produced either by the Bigelow or the Webster motion, and consequently that they

had made no profits for which they were accountable to the complainant. The master found that the Johnson wire motion, which had been continuously used by the Roxbury Carpet Company of Roxbury, Mass., since 1856, until 150 looms furnished with such motions were running at the time when the testimony was taken, "was capable of producing, and actually did produce, results so vastly superior to the Bigelow as to utterly destroy the latter as a basis of ascertaining the gains, profits, and advantages which were realized by the defendant by reason of the infringement." He does not find the exact amount of its superiority in point of productiveness to the Bigelow device, or the relation which the Johnson motion bore in its capacity for assisting production to the Webster motion, because he was of opinion that, the defendants having shown the superiority of the Johnson motion over the Bigelow, "the burden of furnishing the means for making a computation based upon the superiority of the infringed device over all others open and free to the public use, was wholly upon the complainant, and he must do it by trustworthy legal proof. Should any of the factors necessary to ascertain the computation be destroyed by defendants, a new basis must be established by the proofs, or the accounting fails." The master found nothing in regard to the relative superiority or inferiority of any of the other devices in regard to which evidence was offered. Upon both the law and facts he found that the complainant had failed to establish by trustworthy legal proof any basis for the computation of profits. It will thus be seen that, in addition to the number of infringing looms and the number of yards manufactured thereon, the master found upon the questions of fact only the superiority of the Johnson wire motion to the Bigelow motion. The complainant excepts to all the foregoing conclusions both of law and fact, which the master reached.

Two questions were presented for his decision: (1) Did the defendants derive any advantage from using the complainant's invention over what they would have had "in using other means then open to the public, and adequate to obtain an equally beneficial result?" And, (2) if yea, what were the fruits or the profits which resulted from that advantage? The alleged advantage is a vastly increased capacity to produce, and actual increased production of finished goods. As the standard of pre-existing success in weaving pile fabrics the complainant selected the Bigelow motion, and apparently, from the history of the litigation upon this patent in New Jersey, had a right to make such selection. The defendants designated divers motions as superior to the Webster, and furthermore offered proof to show that the alleged capacity of the Bigelow motion was too low. From these devices the master properly gave most attention to the Johnson, because, as he says, "there is no question as to its being open and free, and because the proofs seem more direct and reliable." The Roxbury Company had had no interest in this infringement. The testimony was derived from the books, which were apparently kept in the ordinary course of business, without reference to this question, during the same years in which the infringing looms were used by the defendants, and the master justly thought that the proof seemed

more direct than in regard to the other motions. After having found its superiority to the Bigelow, he stopped his investigations, upon the ground that, as the defendants had destroyed the complainant's standard, there could be no standard until the complainant voluntarily created one. Whether this is or is not a correct application of the doctrine of the burden of proof in other cases I shall not inquire, because it is not, in my opinion, correctly applied to the facts in this case. The question was as to the advantage which the defendants had from the use of the patented invention, and the plaintiff said the advantage is large by reason of its superiority to the acknowledged pre-existing standard. The defendants' testimony was a comparison of the Johnson with the Webster, rather than with the Bigelow. It not merely attacked the correctness of the plaintiff's standard, but by testimony, which purported to be exact, definite, and mathematically accurate, set up a new standard, and endeavored to establish the fact that the Roxbury motion gave larger results than the patented motion. The testimony on both sides has been closed, and, if the Roxbury testimony was credible, and was believed by the master, it was not merely negative; but, in connection with the criticisms which were made upon it by the complainant's counsel, and the analysis which it received from them, it was capable of giving a a positive answer to the first question. If the new standard is a true standard, it is not important who introduced it into the case. The master should have found whether any advantage was derived by the defendants from the use of the patented invention over what they would have had in using the Johnson motion.

The next question is one of law, and relates to the rule for the computation of profits in case an advantage is found; or, in other words, what were the fruits of the advantage? The complainant contends that the rule is the net profit which the defendants received per yard upon the increased amount of manufactured carpets. The master thinks that it is the difference, if any, between the cost of weaving the same number of yards upon any loom, with or without a wire motion, which were free to be used, and the cost of weaving upon the infringing looms. This question is both an important and an interesting one; but, for the purposes of this case, I think that it is settled in this circuit, by the decision of Judge WALLACE[1] upon the motion of the defendants to direct the master not to require an account of the cost of production and the selling price of said carpets. In the opinion denying the motion Judge WALLACE said:

"These profits arise because by using the patented loom the defendants have produced more yards of carpet than they could have produced by using such looms and appliances as it was open for them to use. Upon this theory it is to be ascertained to what extent defendants' production has been increased by the use of the patented loom, and then the average profit per yard, or the aggregate profit on the increased production that actually accrued to the defendants. * * * The complainant has the right to follow the profits through all the stages of production, and all the departments of their busi-

[1] Not reported.

ness, because the ultimate profit made by the defendants is the measure of their accountability."

This decision was directly upon the proper rule of profits in this case, after an argument of the question, and its conclusions are not now open for review on my part. If any advantage is found, the amount of profit should be estimated by the master in accordance with the rule stated in the opinion of the circuit judge.

The defendants offered testimony, which was admitted, respecting the comparative advantages in point of weaving capacity of divers English looms with wire motions, which were patented in England at different dates, but were never patented in this country. The complainant and the defendants differ upon questions of law whether those patented devices, or any of them, or which of them, were free and open to be used, and also differ as to the time when a comparison is permitted to be made; the complainant, for example, contending that a device must be free and open at the date of the complainant's patent; and the defendants contending that, if it is free and open at or during the time of the infringement, then from and after the time when it becomes free it is a proper subject of comparison. Inasmuch as the master has found nothing in regard to these devices, and is not herein directed to make a new finding respecting them, a decision of these questions is unnecessary. The report is recommitted to the master, to make a further report in conformity with the views herein expressed.